UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawn Simmons, # 11044-171, | ) C/A No. 9:08-2522-MBS-GCK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **Report and Recommendation** |
| | ) |
| United States Attorney General Department of Justice; | ) |
| United States Attorney for the District of South Carolina, | ) |
| | ) |
| Defendants. | ) |

## *Background of this Case*

The plaintiff is a federal prisoner at FCI-Sandstone in Sandstone, Minnesota. He is serving a sixty-month sentence for use of a machine gun during a drug trafficking crime. The petitioner's conviction was entered pursuant to a guilty plea in *United States v. Shawn Simmons*, Criminal No. 3:04-52-MBS-2.

The petitioner has a prior § 2255 action in this district. In *Shawn Simmons v. United States of America*, Civil Action No. 3:05-2723-MBS, the petitioner on September 20, 2005, brought a § 2255 action. On April 23, 2007, the Honorable Margaret B. Seymour, United States District Judge, granted summary judgment in favor of the United States. The petitioner's appeal (Fourth Circuit Docket No. 07-6794) in Civil Action No. 3:05-2723-MBS was not successful. The United States Court of Appeals for the Fourth Circuit dismissed the appeal on September 17, 2007. *United States*

1

*v. Simmons*, 241 Fed.Appx. 973, 2007 U.S.App. LEXIS® 22176, 2007 WL 2720399 (4th Cir., Sept. 17, 2007).

The above-captioned case is purportedly an action under the federal Freedom of Information Act (FOIA) concerning the status of U.S. Highway 501 as federal property. Specifically, the plaintiff seeks court copies of his Rule 6(f) proceedings and a court order requiring "production for his [the plaintiff's] inspection of the contract between the Governor of the State of South Carolina ceding jurisdiction to the Attorney General over the property located within the state of South Carolina previously signed and executed before the Plaintiff's commission of the instant offenses charged in Case No. 3:04-52 and the Court's record where the United States Attorney established the United States territorial and legislative jurisdiction."[1]  The plaintiff's Answers to the Court's Special Interrogatories (Entry No. 9) reveal that the plaintiff has not filed a formal request under the Freedom of Information Act with the United States Department of Justice.

---

[1] The above-captioned case may be a precursor to an action by the plaintiff to challenge his conviction on the grounds that the crime for which he was convicted did not take place on federal property or affect interstate commerce. This type of contention is often raised by federal prisoners convicted of drug-related offenses. *See, e.g., Smith v. United States*, 2007 U.S.Dist. LEXIS® 3818, 2007 WL 160996 (E.D. Tenn., Jan. 16, 2007) (interstate commerce not an essential element for a conviction under 21 U.S.C. § 841(a)(1) and United States had authority to prosecute person for drug trafficking that took place in a State on an individual's private property).

## *Discussion*

Under established local procedure in this judicial district, a careful review[2] has been made of the *pro se* pleadings pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-325 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979) (recognizing the district court's authority to conduct an initial screening of any *pro se* filing);[3] *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, ___ U.S. ___, 75 U.S.L.W. 3643, 167 L.Ed.2d 1081, 127 S.Ct. 2197 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the above-captioned case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a

---

[2] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[3] *Boyce* has been held by some authorities to have been abrogated in part, on other grounds, by *Neitzke v. Williams*, 490 U.S. 319 (1989) (insofar as *Neitzke* establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

The above-captioned case is subject to summary dismissal because the plaintiff has not exhausted his administrative remedies by filing a formal request under the Freedom of Information Act with the United States Department of Justice. A litigant may generally seek judicial review of his FOIA request only after he or she has exhausted all administrative remedies. *See Spannaus v. U.S. Dept. of Justice*, 824 F.2d 52, 58 (D.C. Cir.1987); *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364, 366 (D.C. Cir.1985). *See also Pollack v. Department of Justice*, 49 F.3d 115 (4th Cir. 1995). To begin the exhaustion of administrative remedies process, a requester must make a formal request under the FOIA by filing his request with the proper official/office of the agency in accordance with the terms of that agency's regulations. *See Kessler v. United States*, 899 F. Supp. 644 (D.D.C. 1995) (IRS records); *American Federation of Gov't Employees v. United States Dept. of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990); *Dettmann v. United States Dept. of Justice*, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986); and *Church of Scientology v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986).

The plaintiff is not entitled to court records from his criminal case. A federal court is **not** subject to the federal Freedom of Information Act. *See United States v. Miramontez*, 995 F.2d 56, 59 n. 3 (5th Cir. 1993) ("Even if Miramontez were asserting the FOIA as grounds for disclosure, he would not prevail. The FOIA directs agencies of the federal government to make certain information available to the public. 5 U.S.C. §§ 552. Federal courts, however, are expressly excluded from the definition of 'agency' for purposes of FOIA disclosure requirements. 5 U.S.C. § 551(1)(B)."). *See also Warth v. Department of Justice*, 595 F.2d 521, 523, 50 A.L.R.Fed. 331 (9th Cir. 1979) ("Courts

are exempt from the FOIA's disclosure requirements in order to assure that the Act would not impinge upon the court's authority to control the dissemination of its documents to the public."); and *United States v. Charmer Industries, Inc.*, 711 F.2d 1164 (2nd Cir. 1983), where the Court denied release of a pre-sentence report to a third party:

> As a court document, the presentence report is not within the purview of either the Freedom of Information Act, 5 U.S.C. § 552 (1976 & Supp. V 1981), or the Privacy Act, 5 U.S.C. § 552a (1976 & Supp. V 1981), notwithstanding its use or retention by agencies such as the Bureau of Prisons and the Parole Commission. *See FDIC v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982); *Cook v. Willingham*, 400 F.2d 885 (10th Cir. 1968); AO Presentence Monograph at 27-28 & n. 3.

*United States v. Charmer Industries, Inc.*, 711 F.2d at 1170 n. 6.

Longstanding circuit precedents have provided that a prisoner who requests free copies of records in his or her criminal case, whether it is a state case or a federal case, must show a particularized need for such records. *Jones v. Superintendent, Virginia State Farm*, 460 F.2d 150, 152-53 & nn. 3-4 (4th Cir. 1972), *adhered to*, 465 F.2d 1091, 1092-96 (4th Cir. 1972)(denying rehearing *en banc*), *cert. denied*, 410 U.S. 944 (1973). ***A state or federal prisoner does not have the right to request free transcripts so that he or she can search the record of conviction to find possible flaws.*** *See United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963) ("An indigent is not entitled to a transcript at government expense without a showing of need, merely to comb the record in the hope of discovering some flaw."); and *United States v. Shoaf*, 341 F.2d 832, 833-36 & nn. 1-6 (4th Cir. 1964) (reaffirming *Glass*). *Cf. United States v. MacCollum*, 426 U.S. 317 (1975) (indigent prisoner not entitled to free transcript to aid him or her in preparing a petition for collateral review). The United States District Court for the District of South Carolina has also applied those precedents

5

in cases where state prisoners have sought orders from this court to direct courts of the State of South Carolina to provide them free transcripts. *See, e.g., Ham v. Leeke*, 459 F. Supp. 459, 462-63 & n. 11 (D.S.C. 1978), *appeal dismissed*, 586 F.2d 837 (4th Cir. 1978)[Table].

This district court is aware that federal prisoners convicted in the Seventh Judicial Circuit are allowed to obtain copies from closed criminal files. *See* the decision of the United States Court of Appeals for the Seventh Circuit in *Rush v. United States*, 559 F.2d 455 (7th Cir. 1977). *Rush v. United States* is not the law in the Fourth Judicial Circuit. Hence, the United States District Court for the District of South Carolina is bound by the decisions of the United States Court of Appeals for the Fourth Circuit in *United States v. Glass* and *United States v. Shoaf*. *See also Askew v. United States*, 2006 U.S. Dist. LEXIS® 82776, 2006 WL 3307469, *9 (E.D. Ky., Nov. 13, 2006) (a plaintiff cannot use "FOIA action to collaterally challenge a criminal conviction").

The highway records that the plaintiff is seeking do not exist. The plaintiff is obviously unaware that a United States ("U.S.") Highway is not a highway owned, operated, or maintained by the Government of the United States. The U.S. Highway designation was developed by the American Association of State Highway Officials in November of 1924 for coordinating the naming and marking of highways among the States. *See Numbering Conventions: Federal Highway System*, *reported at* www.cahighways.org/num-ushwy.html (last visited on August 5, 2008), which noted:

> The Federal Highway System (i.e., "US" highway routes) was initially proposed at the annual meeting of the American Association of State Highway Officials in November 1924 to coordinating the naming and marking of interstate highways. They prepared a resolution requesting the Secretary of Agriculture to select a system of highways, and appointed a board to perform a study and make recommendations in March 1925. Initial routes were selected from the Federal Aid Road System, and it was decided that routes be marked by means of a standard highway marking sign. The numbering system for these

highways was adopted in August, 1925. The basic goal was to have the US Highway milage be no more than 3% of the total certified rural miles in the state. California's eventual milage was 2,220 miles, or 3.1%. The sign used for the Federal Highway System was adopted in 1926, and was rectangular in shape.

A letter from Mr. Edwin W. James, as preserved at the FHWA, provides some good insight into the early days of this system. It it, he notes:

> I was secretary of the Board and most of the details passed through my hands at one time or another. At one of the first meetings the general question presented above was thrown into my lap. I knew it must come sooner or later and had given it considerable thought. You will quickly see on scanning the report the conditions we faced in the particular task laid before us. There were two conditions that must be met. (1) The scores of named routes, roads and trails must be eliminated. Such a method of designating so large a system of roads on a fairly established pattern was not feasible. It was too cumbersome, it had a bad background of unintelligent but kindly, serious and friendly efforts by hundreds, maybe thousands of good road advocates and effective road boosters. In opposing such a group we were pushing aside some of the biggest and best support we had for the big road plan. The good would have to go with the bad. Organizations like the Lincoln Highway, the Dixie Highway, the Old Spanish Trail Associations which were sound agencies could not be reserved while three or four score "skip-by-night" agencies were to be ignored and washed out. (2) The second puzzle in the task at hand was to devise a scheme that would take up all the named routes we wished to save, in whole or in part; be flexible enough to permit expansion over a long period, and above all fit the United States as an area without an established road system of old, and now about to create one on a magnificent plan.
>
> When this task was put into my lap, I was instructed to confer with A. B. Fletcher, then of

California, who apparently had some good ideas for the job in hand. This "Committee of Two" did not last long. Mr. Fletcher asked me to his office at once and showed me his big idea. It would be the longest single road in the world. It could be numbered No. 1 and was laid out on a U.S. map he had on his desk, from a point, Seattle or Portland, away up in the north west to Key West below the tip of Florida. It would be the greatest road in the world! As I listened and looked, I first wondered where No. 2 road would be laid, and where Nos. 5, 10, 50 and 100? A road map of such a system would be a map of chaos, not of roads. I saw at once that Mr. Fletcher and I were not thinking along the same lines, and I saw that I had better go it alone.

By that time I had my idea of the second task under control, and with Fletcher of little help I saw that I must show my hand at once, and have so good a solution that it would carry me past the first task of shoving the trail organizations aside.

So I went ahead on that basis. As you know, the U.S. is about twice as wide as it is from North to South, and with this I saw a complete pattern of just what I wished. It stares one in the face, it is so simple and so adjustable. With north-south roads numbered odd from east to west, and east-west roads numbering even from north to south, you at once start a simple, systematic, complete, expansible pattern for a long time development. Numbered on the 10's; 10, 20, 30, etc., to 90 would provide nine principal east-west routes.

Numbered on the 11's and 5's; 1, 5, 11, 15, etc., to 101 on the Pacific Coast, you would provide the 20 base routes for the north-south pattern.

Note: The US Highway sytem is a different critter than Interstates. Interstates have special funding, US Highways are funded from the same pot as state highways. **In fact, a US highway is just a state highway with a fancy shield and a number that matches the national grid. US highways are meant for navigation only,** as

opposed to the 'quality' function of Interstate routes. With the US designation comes a certain amount of voluntary oversight from AASHTO. [Information courtesy of R.V.Droz]

The numbering conventions for the US Highways is as follows:

> Odd   Lowest numbers in the East
> Even  Lowest numbers in the North

The numbers assigned to principle east/west routes end in 0; for north/south routes, they end in 1. Other increments of the low-order digit fill in the grid. Where necessary, a high-order digit is added to provide additional spur routes.

Divided routes are supported, and have a character appended (for example, US99E and US99W. There are also special purpose routes: Business, Bypass (Byp), Alternate (Alt or A), Temporary, and Toll. At one time, there were designations such as "City".

AASHTO now requires that routes that exist solely in one state under 300 miles be eliminated as US highway routes.

Information on the original set of US Highways in California can be found in Casey Cooper's "California US Highways in 1928" Page.



(http://www.cahighways.org/num-ushwy.html [emphasis added]). Hence, the federal crime to which the plaintiff pled guilty took place on "just a state highway with a fancy shield and a number that matches the national grid."

## Recommendation

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without issuance and service of process. *See Denton v. Hernandez; Neitzke v. Williams; Brown v. Briscoe*, 998 F.2d 201, 202-204 (4th Cir. 1993); 28 U.S.C. § 1915(e)(2)(B)

9

[essentially a redesignation of "old" § 1915(d)]; and 28 U.S.C. § 1915A [as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal]. The plaintiff's attention is directed to the Notice on the next page.

August __6__, 2008
Charleston, South Carolina

George C. Kosko
United States Magistrate Judge

## Notice of Right to File Objections to Report and Recommendation

The plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Court Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** In the absence of a timely filed objection, a district court judge need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in a waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); and *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).